FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

2020 MAY 27  PM 4: 51

CLERK. US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO.FLORIDA

UNITED STATES OF AMERICA

v.

CASE NO. 8:20-CR-165-T-35AAS

JAMES WESLEY MOSS,
EDWARD CHRISTOPHER WHITE, JR.,
DAVID BYRON COPELAND, and
MICHAEL ALTON GORDON SEALED

18 U.S.C. § 371
42 U.S.C. § 1320a-7b(b)(1)
42 U.S.C. § 1320a-7b(b)(2)
21 U.S.C. § 841(a)(1)

## INDICTMENT

The Grand Jury charges:

### COUNT ONE
### (Conspiracy)

#### A.  Introduction

At times material to this Indictment:

**The Defendants and Their Businesses**

1.     Defendant JAMES WESLEY MOSS was a resident, at various times, of Panama City Beach, Florida and Zephyrhills, Florida and was a co-owner of Florida Pharmacy Solutions, Inc. ("FPS") and a co-owner of Helix Management Solutions, LLC ("Helix").

2.     Defendant EDWARD CHRISTOPHER WHITE, JR., was a pharmacist by training and a resident of Panama City Beach, Florida, and was the owner of Mediverse, LLC ("Mediverse") and a co-owner of Helix.

3.    Defendant DAVID BYRON COPELAND was a resident of Tallahassee, Florida and was a co-owner of FPS, and he also served as a Regional Sales Consultant for FPS.

4.    Defendant MICHAEL ALTON GORDON was a resident of Tallahassee, Florida and worked as a pharmaceutical sales and marketing representative and as a Service Consultant for FPS.

5.    FPS was a Florida corporation owned by defendants MOSS and COPELAND, and others.   FPS was a compounding pharmacy with principal places of business in Dade City and Zephyrhills, Pasco County, Florida. Defendant MOSS served in various management positions of FPS including as President, Chief Executive Officer, and Director.   Defendant MOSS maintained signature authority on FPS bank accounts at Bank of America, account number ending in 8718; and at Wells Fargo Bank, account number ending in 6675.   FPS concentrated on producing and marketing compounded prescription drugs including expensive pain creams and scar creams that were available only by prescription.   FPS used sales and marketing representatives as independent contractors to market expensive compounded medications almost exclusively to beneficiaries of TRICARE, a federal health care benefit program, based upon an understanding that TRICARE would pay claims for these expensive compounded creams.

2

6.    Mediverse was a Florida Limited Liability Company owned and controlled by defendant WHITE who maintained signature authority on a Mediverse bank account at Wells Fargo Bank, account number ending in 1659.   Mediverse was a pharmacy consulting and marketing firm and maintained principal places of business in Panama City Beach, Florida and Miramar Beach, Florida.   Defendant WHITE performed various consulting and sales marketing services for FPS on behalf of Mediverse.

7.    Helix was a Florida Limited Liability Company owned and controlled by defendants MOSS and WHITE.   Helix was a medical billing company and maintained principal places of business in Dade City, Florida, Panama City Beach, Florida, and Miramar Beach, Florida.   Defendant WHITE maintained signature authority over a Helix bank account at Wells Fargo Bank, account number ending in 8335.

8.    TDSNOLE1, LLC ("TDSNOLE1") was a Florida Limited Liability Company controlled by defendant COPELAND that provided certain sales and marketing services for FPS, and maintained a principal place of business in Tallahassee, Florida.   Defendant COPELAND managed and controlled TDSNOLE1 and maintained and controlled a TDSNOLE1 bank account at Wells Fargo Bank, account number ending in 0111.

3

9.      Mike Gordon, LLC was a Florida Limited Liability Company that was owned and controlled by defendant GORDON and maintained a principal place of business in Tallahassee, Florida.   Defendant GORDON maintained signature authority on a Mike Gordon, LLC bank account at Hancock Whitney Bank, account number ending in 6823.

10.      Balanced RX, LLC ("Balanced Rx") was a Florida Limited Liability Company that was owned and controlled by defendant GORDON and maintained a principal place of business in Tampa, Florida.   Defendant Gordon maintained signature authority on a Balanced Rx bank account at Hancock Whitney Bank, account number ending in 6863.

**The TRICARE Program**

11.      TRICARE was a health care benefit program of the United States Department of Defense ("DOD"), Military Health System, which provided coverage for DOD beneficiaries worldwide, including active duty service members, National Guard and Reserve members, retirees, their families, and survivors.   Individuals who received health care benefits through TRICARE were referred to as TRICARE beneficiaries.   The Defense Health Agency ("DHA"), an agency of the DOD, was responsible for overseeing and administering the TRICARE program.

12.    TRICARE was a "health care benefit program," as defined by 42 U.S.C. § 1320a-7b(f) and 18 U.S.C. § 24(b), that affected commerce, as that term is used in 42 U.S.C. § 1320a-7b(b).

13.    TRICARE provided coverage for certain prescription drugs, including certain compounded drugs that were medically necessary and prescribed by a licensed medical professional.   Express Scripts, Inc. ("Express Scripts") administered TRICARE's prescription drug benefits.

14.    TRICARE beneficiaries could fill their prescriptions through military pharmacies, TRICARE's home delivery program, network pharmacies, and non-network pharmacies.   If a beneficiary chose a network pharmacy, the pharmacy would collect any applicable co-pay from the beneficiary, dispense the drug to the beneficiary, and submit a claim for reimbursement to Express Scripts, which would in turn adjudicate the claim and reimburse the pharmacy directly or through a Pharmacy Services Administrative Organization ("PSAO").   To become a network pharmacy, a pharmacy agreed to be bound by, and comply with, all applicable State and Federal laws, specifically including those addressing fraud, waste, and abuse.

**Compound Drugs Generally**

15.    In general, "compounding" was a practice in which a licensed pharmacist, a licensed physician, or, in the case of an outsourcing facility, a person under the supervision of a licensed pharmacist, combined, mixed, or altered ingredients of a drug or multiple drugs to create a prescription tailored to the needs of an individual patient.   Compounded drugs were not approved by the U.S. Food and Drug Administration ("FDA"); that is, the FDA did not verify the safety, potency, effectiveness, or manufacturing quality of compounded drugs.   The Florida State Board of Pharmacy regulated the practice of compounding in the State of Florida.

16.    Compounded drugs may have been prescribed by a physician when an FDA-approved drug did not meet the health needs of a particular patient.   For example, if a patient was allergic to a specific ingredient in an FDA-approved medication, such as a dye or a preservative, a compounded drug could be prepared excluding the substance that triggered the allergic reaction.   Compounded drugs may also have been prescribed when a patient could not consume a medication by traditional means, such as an elderly patient or child who could not swallow an FDA-approved pill and needed the drug in a liquid form that was not otherwise available.

## B.    The Conspiracy

17.    Beginning in or about November 2012, and continuing through in or about September 2015, in the Middle District of Florida and elsewhere, the defendants,

JAMES WESLEY MOSS,
EDWARD CHRISTOPHER WHITE, JR.,
DAVID BYRON COPELAND, and
MICHAEL ALTON GORDON,

did knowingly and willfully combine, conspire, confederate, and agree with each other and others known and unknown to the Grand Jury, to:

a.    defraud the United States by cheating the government out of money and property and by impairing, impeding, obstructing, and defeating through deceit, craft, and trickery, the lawful government functions of the United States Department of Defense, Defense Health Agency, in its administration and oversight of the TRICARE program;

b.    commit an offense against the United States, that is, soliciting and receiving remuneration (kickbacks and bribes), in violation of 42 U.S.C. § 1320a-7b(b)(1); and

c.    commit an offense against the United States, that is, offering and paying remuneration (kickbacks and bribes), in violation of 42 U.S.C. § 1320a-7b(b)(2).

7

### C.    Manner and Means of the Conspiracy

18.    The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

a.    It was part of the conspiracy that MOSS, and other conspirators, would and did own and operate FPS for the purpose of targeting TRICARE beneficiaries and causing the submission to TRICARE of claims for expensive prescription compounded drugs that were not legitimately prescribed because they were induced and procured by the payment of illegal kickbacks and bribes.

b.    It was further a part of the conspiracy that the conspirators would and did target beneficiaries of federal health care benefit programs, including TRICARE, for the purpose of procuring prescriptions for expensive compounded drugs and referring the prescriptions to be filled at FPS.

c.    It was further a part of the conspiracy that conspirators MOSS and WHITE, and others, would and did submit and cause to be submitted false and fictitious claims to TRICARE for expensive compounded prescription drugs, a practice known as "test billing," for the purpose of determining whether TRICARE would pay a claim for those drugs and which

ingredients in a compounded prescription would result in the highest reimbursement to FPS from TRICARE.

d.       It was further a part of the conspiracy that conspirators MOSS and WHITE, and others, would and did obtain a signed "Blanket Letter of Authorization" from prescribing doctors that purported to authorize pharmacists at FPS to alter the ingredients of any compounded prescription without any additional consultation with, or permission from, the doctor and without obtaining a new prescription, for the purpose of maximizing the reimbursement to FPS from TRICARE.

e.       It was further a part of the conspiracy that the conspirators would and did cause FPS to submit claims for payment to TRICARE for providing expensive prescription compounded drugs to TRICARE beneficiaries living in approximately 30 states and several foreign countries.

f.       It was further a part of the conspiracy that conspirator MOSS, through FPS, would and did pay and cause to be paid, directly and indirectly, illegal kickbacks and bribes totaling approximately $20,267,094.80 to conspirators WHITE, COPELAND, and GORDON, and others, in exchange for procuring and referring prescriptions for expensive compounded drugs for TRICARE beneficiaries to be filled by FPS.

9

g.      It was further a part of the conspiracy that conspirator MOSS, through FPS, would and did pay and cause to be paid, directly and indirectly, illegal kickbacks and bribes to doctors to induce them to procure and refer prescriptions for expensive compounded drugs for TRICARE beneficiaries to be filled by FPS.

h.      It was further a part of the conspiracy that conspirator WHITE, through Mediverse and Helix, would and did pay and cause to be paid, directly and indirectly, illegal kickbacks and bribes, originating from conspirator MOSS and FPS, to sales and marketing companies and to telemedicine companies to induce them to procure and refer prescriptions for expensive compounded drugs for TRICARE beneficiaries to be filled by FPS.

i.      It was further a part of the conspiracy that conspirator WHITE would and did arrange for conspirator MOSS to execute a contract with conspirator GORDON that provided for GORDON to work as an independent sales representative and "Service Consultant" for FPS.

j.      It was further a part of the conspiracy that conspirator COPELAND, through TDSNOLE1, would and did pay and cause to be paid illegal kickbacks and bribes, originating from conspirator MOSS and FPS, to conspirator GORDON, in exchange for GORDON procuring and referring

10

prescriptions for expensive compounded drugs for TRICARE beneficiaries to be filled by FPS.

k. It was further a part of the conspiracy that conspirator GORDON would and did recruit doctors to execute contracts with conspirator MOSS, on behalf of FPS, whereby FPS would pay kickbacks and bribes in the form of purported "speaking fees" and "research fees" to the doctors in exchange for referring prescriptions for expensive compounded drugs for TRICARE beneficiaries to be filled by FPS.

l. It was further a part of the conspiracy that conspirators COPELAND and GORDON would and did structure and cause to be structured one or more kickback payment(s), originating from conspirator MOSS and FPS, by dividing a kickback payment into incremental amounts, each under $10,000, for the purpose of evading currency transaction reporting requirements and to conceal their criminal activity.

m. It was further a part of the conspiracy that the conspirators would and did cause the submission of claims from FPS to TRICARE for expensive prescription compounded drugs that were not legitimately prescribed because they were induced and procured by the payment of illegal kickbacks and bribes, said claims totaling approximately $54 million, which represented approximately 99% of all FPS claims billed to TRICARE, and

11

which resulted in payments from TRICARE to FPS totaling approximately $41 million.

n.    It was further a part of the conspiracy that the conspirators would and did use the illegal proceeds from the conspiracy to enrich themselves and to further the purposes and objects of the conspiracy.

o.    It was further a part of the conspiracy that the conspirators would and did participate in meetings, perform acts, and make statements to promote and achieve the objects of the conspiracy and to conceal the purposes of the conspiracy and the acts committed in furtherance thereof.

### D.    Overt Acts

19.    In furtherance of the conspiracy and to accomplish its objects and purpose, the conspirators committed and caused to be committed, in the Middle District of Florida and elsewhere, the following overt acts, among others:

a.    On or about the dates set forth below, each of which constitutes a separate overt act, conspirator MOSS paid money using checks drawn on the FPS bank account at Bank of America, account number ending in 8718, to conspirator WHITE, through Mediverse and Helix, in the approximate amounts and deposited to the accounts as listed below:

12

| Overt Act | Date | Amount | Check No. | Payable To: |
|---|---|---|---|---|
| a.1 | November 7, 2014 | $108,225.73 | 1691 | Mediverse, Wells Fargo Bank account ending in 1659 |
| a.2 | January 28, 2015 | $118,740.92 | 1820 | Mediverse, Wells Fargo Bank account ending in 1659 |
| a.3 | February 11, 2015 | $185,110.01 | 1833 | Mediverse, Wells Fargo Bank account ending in 1659 |
| a.4 | February 27, 2015 | $206,458,12 | 1855 | Mediverse, Wells Fargo Bank account ending in 1659 |
| a.5 | March 31, 2015 | $383,783.65 | 1895 | Mediverse, Wells Fargo Bank account ending in 1659 |
| a.6 | April 28, 2015 | $400,000.00 | 001947 | Mediverse, Wells Fargo Bank account ending in 1659 |
| a.7 | May 27, 2015 | $286,375.00 | 001990 | Helix, Wells Fargo Bank account ending in 8335 |
| a.8 | June 3, 2015 | $500,000.00 | 002023 | Mediverse, Wells Fargo Bank account ending in 1659 |
| a.9 | June 3, 2015 | $500,000.00 | 002024 | Mediverse, Wells Fargo Bank account ending in 1659 |
| a.10 | June 3, 2015 | $1,001,210.56 | 002025 | Mediverse, Wells Fargo Bank account ending in 1659 |
| a.11 | June 17, 2015 | $415,618.00 | 002058 | Helix, Wells Fargo Bank account ending in 8335 |
| a.12 | June 30, 2015 | $732,975.00 | 002124 | Helix, Wells Fargo Bank account ending in 8335 |

b.     On or about the dates set forth below, each of which constitutes a separate overt act, conspirator MOSS paid money by checks from the FPS bank account at Wells Fargo Bank, account number ending in 6675, to conspirators WHITE and COPELAND, through Mediverse, Helix and TDSNOLE1, in the approximate amounts and deposited to the accounts as listed below:

13

| Overt Act | Date | Amount | Check No. | Payable To: |
|---|---|---|---|---|
| b.1 | December 11, 2014 | $108,221.96 | 7257 | TDSNOLE1, Wells Fargo Bank account ending in 0111 |
| b.2 | December 29, 2014 | $168,961.51 | 7340 | TDSNOLE1, Wells Fargo Bank account ending in 0111 |
| b.3 | January 12, 2015 | $221,022.31 | 7406 | Helix, Wells Fargo Bank account ending in 8335 |
| b.4 | January 13, 2015 | $124,190.35 | 7408 | TDSNOLE1, Wells Fargo Bank account ending in 0111 |
| b.5 | January 21, 2015 | $409,834.56 | 7439 | Mediverse, Wells Fargo Bank account ending in 1659 |
| b.6 | January 28, 2015 | $174,666.78 | 7459 | TDSNOLE1, Wells Fargo Bank account ending in 0111 |
| b.7 | February 9, 2015 | $130,232.00 | 7561 | Helix, Wells Fargo Bank account ending in 8335 |
| b.8 | February 11, 2015 | $112,553.08 | 7584 | TDSNOLE1, Wells Fargo Bank account ending in 0111 |
| b.9 | February 18, 2015 | $409,834.55 | 7599 | Mediverse, Wells Fargo Bank account ending in 1659 |
| b.10 | February 25, 2015 | $280,301.92 | 7635 | TDSNOLE1, Wells Fargo Bank account ending in 0111 |
| b.11 | March 10, 2015 | $144,736.76 | 7726 | TDSNOLE1, Wells Fargo Bank account ending in 0111 |
| b.12 | March 16, 2015 | $176,520.00 | 7757 | Helix, Wells Fargo Bank account ending in 8335 |
| b.13 | March 17, 2015 | $132,208.03 | 7758 | Mediverse, Wells Fargo Bank account ending in 1659 |

c.    On or about the dates set forth below, each of which constitutes a separate overt act, conspirator MOSS paid money by wire transfers from the FPS bank account at Wells Fargo Bank, account number ending in 6675, and from FPS bank account at Bank of America, account ending in 8718, to conspirator WHITE, through Mediverse, in the approximate amounts and deposited to the accounts as listed below:

14

| Overt Act | Date | From FPS Account | Amount | Payable To: |
|---|---|---|---|---|
| c.1 | April 14, 2015 | 6675 | $600,000.00 | Mediverse, Wells Fargo Bank account ending in 1659 |
| c.2 | April 21, 2015 | 6675 | $1,000,000.00 | Mediverse, Wells Fargo Bank account ending in 1659 |
| c.3 | June 15, 2015 | 8718 | $4,940,136.53 | Mediverse, Wells Fargo Bank account ending in 1659 |

d.      On or about October 21, 2014, conspirator MOSS, on behalf of FPS, and conspirator GORDON, on behalf of Mike Gordon, LLC, signed a contract whereby conspirator GORDON became a Service Consultant for FPS.

e.      On or about the dates set forth below, each of which constitutes a separate overt act, conspirator MOSS paid money by checks from the FPS bank account at Wells Fargo Bank, account number ending in 6675, and from the FPS bank account at Bank of America, account number ending in 8718, to conspirator GORDON, in the approximate amounts as listed below:

| Overt Act | Date | From FPS Account | Check No. | Amount | Payable To: |
|---|---|---|---|---|---|
| e.1 | October 29, 2014 | 6675 | 7056 | $1676.63 | Mike Gordon |
| e.2 | November 17, 2014 | 6675 | 7136 | $ 868.24 | Mike Gordon |
| e.3 | November 24, 2014 | 6675 | 7186 | $5,501.36 | Mike Gordon |
| e.4 | November 25, 2014 | 6675 | 7190 | $1,400.00 | Mike Gordon |
| e.5 | December 22, 2014 | 6675 | 7301 | $1,469.33 | Mike Gordon |
| e.6 | December 22, 2014 | 6675 | 7302 | $7,127.01 | Mike Gordon |
| e.7 | January 22, 2015 | 6675 | 7447 | $5,338.25 | Mike Gordon |
| e.8 | February 10, 2015 | 6675 | 7581 | $6,204.47 | Mike Gordon |

15

| e.9 | March 5, 2015 | 6675 | 7699 | $9,982.58 | Mike Gordon |
| e.10 | April 15, 2015 | 8718 | 001913 | $11,662.32 | Mike Gordon |
| e.11 | May 11, 2015 | 8718 | 001951 | $7,791.94 | Mike Gordon |

f.     On or about the dates set forth below, each of which constitutes a separate overt act, conspirator MOSS paid money using checks drawn on the FPS bank account at Bank of America, account number ending in 8718, to conspirator COPELAND, in the approximate amounts and deposited to the accounts as listed below:

| Overt Act | Date | Amount | Check No. | Payable To: |
|---|---|---|---|---|
| f.1 | June 1, 2015 | $295,593.72 | 002010 | TDSNOLE1 account at Wells Fargo Bank ending in 0111 |
| f.2 | June 11, 2015 | $502,606.76 | 002036 | TDSNOLE1 account at Wells Fargo Bank ending in 0111 |

g.     On or about June 4, 2015, conspirator COPELAND paid approximately $191,408.69 to conspirator GORDON by electronic funds transfer through the Automated Clearing House (ACH) from the account of TDSNOLE1 at Wells Fargo Bank, account number ending in 0111, to the account of Balanced Rx at Hancock Whitney Bank, account number ending in 6863.

h.     On or about June 13, 2015, conspirator COPELAND paid a total of approximately $190,000 to conspirator GORDON by a series of 20 checks numbered 2207, 2208, 2209, 2210, 2211, 2212, 2213, 2214, 2215, 2216, 2217, 2218, 2219, 2220, 2221, 2222, 2223, 2224, 2225, and 2226, each check

16

in the amount of $9,500, drawn on the account of TDSNOLE1 at Wells Fargo Bank, account number ending in 0111, and payable to Mike Gordon.

i.　　On or about June 19, 2015, conspirator COPELAND paid approximately $197,784.54 to conspirator GORDON by electronic funds transfer through the Automated Clearing House (ACH) from the account of TDSNOLE1 at Wells Fargo Bank, account number ending in 0111, to the account of Balanced Rx at Hancock Whitney Bank, account number ending in 6863.

All in violation of 18 U.S.C. § 371.

## COUNTS TWO THROUGH TEN
**(Soliciting and Receiving Health Care Kickbacks and Bribes)**

### A.　Introduction

1.　　The Grand Jury re-alleges and incorporates by reference the paragraphs contained in Sections A and C of Count One of this Indictment as though fully set forth herein.

### B.　The Offense

2.　　On or about the dates set forth below in each count, in the Middle District of Florida, and elsewhere, the defendants,

EDWARD CHRISTOPHER WHITE, JR.,
DAVID BYRON COPELAND, and
MICHAEL ALTON GORDON,

17

acting in concert with others, did knowingly and willfully solicit and receive remuneration, that is, kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, (A) in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a federal health care program, and (B) in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a federal health care program, that is, TRICARE, as set forth below:

| Count | Defendant | Date | Approx. Kickback Amount Received |
|-------|-----------|------|----------------------------------|
| TWO | EDWARD CHRISTOPHER WHITE, JR. | June 3, 2015 | $500,000.00 |
| THREE | EDWARD CHRISTOPHER WHITE, JR. | June 3, 2015 | $500,000.00 |
| FOUR | EDWARD CHRISTOPHER WHITE, JR. | June 3, 2015 | $1,001,210.56 |
| FIVE | EDWARD CHRISTOPHER WHITE, JR. | June 15, 2015 | $ 4,940,136.53 |
| SIX | DAVID BYRON COPELAND | June 1, 2015 | $295,593.72 |
| SEVEN | MICHAEL ALTON GORDON | June 4, 2015 | $191,408.69 |
| EIGHT | DAVID BYRON COPELAND | June 11, 2015 | $502,606.76 |
| NINE | MICHAEL ALTON GORDON | June 13, 2015 | $190,000.00 |
| TEN | MICHAEL ALTON GORDON | June 19, 2015 | $197,784.54 |

In violation of 42 U.S.C. § 1320a-7b(b)(1) and 18 U.S.C. § 2.

18

## COUNTS ELEVEN THROUGH NINETEEN
### (Offering and Paying Health Care Kickbacks and Bribes)

### A.    Introduction

1.    The Grand Jury re-alleges and incorporates by reference the paragraphs contained in Sections A and C of Count One of this Indictment as though fully set forth herein.

### B.    The Offense

2.    On or about the dates listed below in each Count, in the Middle District of Florida and elsewhere, the defendants,

JAMES WESLEY MOSS and
DAVID BYRON COPELAND,

did knowingly and willfully offer and pay any remuneration, that is, kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to any person to induce such person (A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a federal health care program, or (B) to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a federal health care program, that is TRICARE, as set forth below:

| Count | Defendant | Date | Approx. Kickback Amount Paid | Paid To: |
|---|---|---|---|---|
| ELEVEN | JAMES WESLEY MOSS | June 3, 2015 | $500,000.00 | Mediverse, LLC |
| TWELVE | JAMES WESLEY MOSS | June 3, 2015 | $500,000.00 | Mediverse, LLC |
| THIRTEEN | JAMES WESLEY MOSS | June 3, 2015 | $1,001,210.56 | Mediverse, LLC |
| FOURTEEN | JAMES WESLEY MOSS | June 15, 2015 | $4,940,136.53 | Mediverse, LLC |
| FIFTEEN | JAMES WESLEY MOSS | June 1, 2015 | $295,593.72 | TDSNOLE1 |
| SIXTEEN | DAVID BYRON COPELAND | June 4, 2015 | $191,408.69 | Balanced Rx |
| SEVENTEEN | JAMES WESLEY MOSS | June 11, 2015 | $502,606.76 | TDSNOLE1 |
| EIGHTEEN | DAVID BYRON COPELAND | June 13, 2015 | $190,000.00 | Mike Gordon |
| NINETEEN | DAVID BYRON COPELAND | June 19, 2015 | $197,784.54 | Balanced Rx |

In violation of 42 U.S.C. § 1320a-7b(b)(2) and 18 U.S.C. § 2.

## COUNT TWENTY
### (Unlawful Distribution of Controlled Substance)

On or about June 28, 2018, in the Middle District of Florida and elsewhere, the defendant,

JAMES WESLEY MOSS,

20

did knowingly and intentionally distribute and possess with intent to distribute a controlled substance, which involved a quantity of a mixture and substance containing a detectable amount of ketamine, a Schedule III controlled substance.

In violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(E).

## FORFEITURE

1.    The allegations contained in Counts One through Twenty are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 982(a)(7) and 21 U.S.C. § 853.

2.    Upon a conviction of a violation of a federal health care offense, including a violation of 42 U.S.C. § 1320a-7b(b)(1)(A) and 42 U.S.C. § 1320a-7b(b)(2)(B) and/or conspiracy to commit such an offense, as alleged in Counts One through Nineteen of this Indictment, the defendants

JAMES WESLEY MOSS,
EDWARD CHRISTOPHER WHITE, JR.,
DAVID BYRON COPELAND, and
MICHAEL ALTON GORDON,

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

3.    Upon a conviction of a violation of 21 U.S.C § 841, the defendant,

21

JAMES WESLEY MOSS,

shall forfeit to the United States, pursuant to 21 U.S.C. § 853, (1) any property

constituting, or derived from, any proceeds the defendant obtained, directly or

indirectly, as the result of such violation; and (2) any of the defendant's

property used, or intended to be used, in any manner or part, to commit, or to

facilitate the commission of, such violation.

4.     The property to be forfeited includes, but is not limited to, a

forfeiture judgment of at least $20,267,094.80 and the following specific assets:

a.     The real property located at 22020 Front Beach Road,
Unit 2, Bay County, Panama City Beach, FL 32413, including all
improvements thereon, and appurtenances thereto, more particularly
described as:

UNIT 2:   COMMENCE at the Northeast corner of Lot 10, Block 5,
Kiska Beach Subdivision, according to the Plat thereof, as recorded in
Plat Book 3, Page 24, of the Public Records of Bay County, Florida;
thence S23 degrees, 22'32"W, along the East line of said lot, a distance
of 125.15 feet to the Southeast corner of said lot; thence N66 degrees
28'49"W, along the South line of said lot, a distance of 50.14 feet to the
Northeast corner of Lot 16, of said Block 5; thence S23 degrees
20'24"W, along the East line of said Lot 16, a distance of 16.47 feet;
thence leaving said East line, N66 degrees 39'36"W, a distance   of 9.35
feet; thence N66 degrees 48'00"W, a distance of 22.25 feet;   thence S23
degrees 46'36"W, a distance of 8.04 feet; thence N66 degrees 43'50"W,
a distance of 18.78 feet to the POINT OF BEGINNING; thence
continue N66 degrees 43'50"W, a distance of 18.62 feet; thence N23
degrees 18'04"E, a distance of 7.99 feet; thence N66 degrees 37'29"W, a
distance of 1.00 feet; thence S23 degrees 45'08"W, a distance of 76.03
feet; thence S66 degrees 44'11E, a distance of 20.25 feet; thence N23
degrees 15'49"E, a distance of 68.04 feet to the POINT OF
BEGINNING.   Said parcel is a part of Lot 17, Block 5, of said Kiska
Beach Subdivision.   Parcel Identification No. 36015-000-015

22

b.     A 2015 Chevrolet Corvette Stingray 2-Door Convertible, VIN #1G1YU3D61F5606404, Florida License Plate #1J51MA.

c.     A 2014 Mercedes Benz ML 350 SUV, VIN #4JGDA5JBXEA351961, Florida License Plate #LQNY28.

5.     If any of the property, as a result of any act or omission of the defendants:

a.     cannot be located upon the exercise of due diligence;

b.     has been transferred or sold to, or deposited with, a third party;

c.     has been placed beyond the jurisdiction of the Court;

d.     has been substantially diminished in value; or

e.     has been commingled with other property which cannot be divided without difficulty;

the United States shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

A TRUE BILL,

_____
Foreperson

MARIA CHAPA LOPEZ
United States Attorney

By: _____
John A. Michelich, Senior Litigation Counsel
United States Department of Justice
Criminal Division, Fraud Section

By: _____
    Allan Medina, Deputy Chief
    United States Department of Justice
    Criminal Division, Fraud Section

By: _____
    Jay G. Trezevant
    Assistant United States Attorney
    Chief, Economic Crimes Section

# UNITED STATES DISTRICT COURT
## Middle District of Florida
### Tampa Division

## THE UNITED STATES OF AMERICA
### vs.

JAMES WESLEY MOSS,
EDWARD CHRISTOPHER WHITE, JR.,
DAVID BYRON COPELAND, and
MICHAEL ALTON GORDON

## INDICTMENT

Violations:   18 U.S.C. § 371
42 U.S.C. § 1320a-7b(1) and (b)(2)
21 U.S.C. § 841(a)(1)

A true bill,

_____
Foreperson

Filed in open court this 27th day

of May, 2020.

_____
Clerk

Bail $_____

GPO 863 525